Mr. Justice CLIFFORD,
after stating the case, delivered the opinion of the court:
1. Persons appearing as claimants, or for the purpose of making defence in causes civil and. maritime, are required, under all circumstances, to answer on oath or solemn affirmation, and the authorities are unanimous that the answer should be full, explicit, and distinct, to each separate article and allegation of the libel.† Claimants merely allege, in this case, that the vessel of the libellants lay in an improper manner, and in an improper place; but the answer does not set forth, or in any form point out, in what manner she lay, or in what respect the manner was improper, nor is there *49 any definite description of the place where she lay, or any reasons assigned why it was an improper anchorage. Explanations in that behalf are entirely wanting; nor is it possible to determine from the allegations of the answer whether the respondents intended to set up that the place selected as an anchorage was an usual one, and that those in charge of their vessel were thereby misled, or whether that part of the answer was intended as an averment that she lay too near to or too far distant from the shore, and more or less in the pathway of navigation than was eustomaiy or necessary. Such indefinite allegations are hardly sufficient to constitute a valid defence; but as no exception was entered to the answer in the District Court, and inasmuch as this point was not made here in argument, perhaps it is but right that the decision of the case should turn upon the merits of the controversy.
2. Evidence shows that the schooner of the libellants was bound on a voyage from Indian Diver, in the State of Delaware, to the port of New York; that she anchored a mile or two .to the northward of Little Egg Harbor light, in consequence of the severity of the cold, and because it was blowing so heavily that those in charge of her did not deem it safe to attempt to proceed on the voyage. Proofs also show that the anchorage was a proper one, and that a number of vessels were anchored still farther to the south. She had a good light suspended in the rigging, and the mate was on deck as a lookout. Suggestion is made that there was some mist or vapor on the water; but if it were conceded that the testimony establishes that fact, still it could not benefit the respondents as a defence, because the proofs are full to the point that it was a clear, moonlight night, and that the light suspended in the rigging of the schooner was some twelve feet above the deck of the vessel. Witnesses for the respondents, or some of them, testify that they did not see the light until just before the collision occurred, and the inference is attempted to be drawn from ihat fact, that the light was in an improper place; but the Vt eight of the evidence satisfies the court that it might easily have been seen if there *50 had been proper vigilance on the part of those in charge of the respondents’ vessel. Both the courts below held that the respondents were in fault, and we entirely concur in that opinion.
3. None of the exceptions to the report of the commissioner are entitled to any consideration except the sixth. First exception was, that the commissioner allowed improper and immaterial evidence to be .introduced by the libellants; but the exception is not accompanied by any report of the evidence objected to,, and of course there is no means of determining whether it was proper or improper. Second exception was, that the commissioner had no evidence to justify his finding, which, without a report of the facts, is quite too indefinite to be available for any purpose, and the same remark applies to the third and fourth exceptions, which need not be reproduced. Fifth exception was to the effect that witnesses were admitted to testify as to the value of the vessel who were not competent, and whose evidence should have been rejected; but the names of the witnesses are not given, nor is it stated why they were incompetent, nor what their testimony was, nor on what ground it is claimed that the testimony should have been rejected. Suffice it to say, that in the judgment of this court these several exceptions are without merit, and were properly overruled. Sixth exception is to the effect that the commissioner improperly reported the value of the cargo as part of the damage, when, in point of fact, the libellants were not entitled to recover therefor. Report of commissioner shows that he estimated the actual damage to the cargo as well as the actual damage to the vessel, and the decree states that the report, as made, was confirmed by the court. Taken together, therefore, the report and decree affirm the principle that the libellants, under the circumstances of this case, were entitled to recover both for the damage to the vessel and cargo. Appellants insist that the action of the court in confirming the. report was erroneous, and that the decree on that account should be reversed. Common carriers, however, it is conceded, are liable for the safe custody, due transport, and right delivery *51 of goods and merchandise intrusted to them to he conveyed from one port or place to another; and where the owners of the ship or vessel damaged by a collision sustain that relation to the cargo, it is admitted that they may recover for its loss or injury in the suit for the collision, if the libel is properly framed and the proofs sustain the charge. Admission to that effect could hardly have been withheld, as it was so decided by this court in the recent case of the Propeller Oommeree,* †to which reference was very properly made. But it is contended that the decision in that case was placed exclusively upon the ground that the lake boat Isabella was a common carrier in the strict technical sense, and the argument is that the schooner of the libellants was not such a carrier, and, therefore, that the rule adopted in that case cannot be applied in the case under consideration. Whether all ships and vessels employed in transporting goods or merchandise from port to port are, strictly speaking, common carriers or not, it is not necessary to determine in this case. Suffice it to say, that they are carriers, and as such are liable for the safe custody, due transport, and right delivery of the goods or merchandise which they receive and undertake to transport, and nothing can discharge them from the obligation of the undertaking, as specified in the bill of lading, but the excepted perils, or the act of God, or the public enemy. Liability, therefore, of the schooner of the libellants as a carrier, was precisely the same as that of the lake boat Isabella, in the case referred to, so that the rule adopted in that ease is fully applicable to the case at bar.† Undoubtedly, all persons interested in a cause of collision may be joined in the libel for the prosecution of their own claims and the protection of their own interests. Owners of the vessel and the shippers of the cargo, for example, and all other persons affected by the injury, may be made parties to the suit, or it may be prosecuted by the master as the agent of all concerned. Where it appears that the party or parties named as libellants are competent to prosecute the suit, the nonjoinder of *52 others having an interest in the controversy must he shown by exception, and, if not made to appear in the court below, cannot be made available as an original objection in the appellate tribunal. Objections to parties, or for the want of proper parties, should be made in the court below, where amendments may be granted in the discretion of the court. Parties improperly joined may, on motion, be stricken out, and new parties may be added by a supplemental libel or petition.* Service of regular process is a warning to all parties who have any interest in the cause to come in and protect their interest; and unless they do so, if due notice was given, they are bound by the decree.† Amendments are readily granted in the Admiralty Court, as carrying out the maxim that all the world are parties to the proceeding; and if due notice be given, and any one interested fails to appear, he cannot thereafter have any ground of complaint. Collision suits are frequently prosecuted by the owners of the injured vessel for damages to the cargo as well as to the vessel, and it does not appear that any serious embarrassment has grown out of the practice. Manifestly, where the prosecution is instituted by one or more parties for themselves and others not named, it would be more regular that it should be so averred in the libel; but as there can be only one prosecution for the same collision, it is not perceived that the omission of that averment can operate to the prejudice of the claimant.‡ Persons appearing as claimants may object to the want of proper parties, and it may be that, if the exception is seasonably and properly taken, the proceeding cannot be sustained. On that point, however, we express no decided opinion, but leave the question to be determined when it shall arise. Suit in this case was commenced by the owners of the vessel, and no exception was taken to the nonjoinder of the shippers of the cargo, either in the pleadings or in any stage of the proceedings, prior to the appeal. Under these circumstances, we are all of the *53 opinion that the objection must be overruled.* . No inconvenience will result from this rule to the claimants of the other vessel, and there will still be sufficient power in the court to afford protection to the rights of the shipper oí the cargo, provided proper measures are taken by Mm to assert his rights before the controversy is completely ended. Where the suit is commenced by the owners of the injured vessel, it is undoubtedly competent for the owners of the cargo to petition to intervene for the protection of their interests at any time before the fund is actually distributed and paid out of the registry of the court. Our conclusion is, that the suit was well brought, and that it was well and properly prosecuted in the name of the libellants. Case does not show that the libellants are not the owners of the cargo; hut if not, the real owners thereof may still intervene.
The decree of the Circuit Court is therefore affirmed with costs. Decree accordingly.

 3 Greenleaf on Evidence, 398, 435.

 1 Black, 682.

 The Niagara v. Cordes, 21 Howard, 26; Clark v. Barnwell, 12 Id., 272.

 Dunlap, Practice, 87.

 Benedict, Admiralty, 364, p. 203; The Mary, 9 Crunch, 144.

 The Kalamazoo, 9 English Law and Equity Reports, 557.

 The Steamboat Narragansett, Olcott Adm. R., 255; The Iron Duke, 9 Jurist, 476; The Monticello v. Mollison, 17 Howard, 155; Fretz et al. v. Bull et al., 12 Id., 466; Sedgwick on Damages, 3d ed., 469; Mer. Shipp, by Maclachlan, 280; Hay v. Le Leve, 2 Shaw’s Appeal Cases, 395; The Petersfield, MS. Cs. temp. Marriott.